Wallace STEVENSON (Deceased) by His Widow, Mildred STEVENSON, Petitioner,

v.

STATE EMPLOYEES' RETIREMENT BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 19, 1997.

Decided Feb. 20, 1998.

Publication Ordered May 13, 1998.

Richard N. Shapiro, Philadelphia, for petitioner.

David Schreiber and John Brosius, Harrisburg, for respondent.

Before DOYLE and McGINLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

Mildred Stevenson (Stevenson) petitions this Court for review of a State Employees' Retirement Board (Board) order denying her request to change the retirement option election of her late husband, Wallace Stevenson (Decedent), and denying her request to reopen the record.

These facts are derived from the Hearing Examiner's Findings of Fact, which were subsequently adopted by the Board. Their comprehensive recitation is necessary to a full understanding of this case. Decedent began work as a workers' compensation referee in 1972 and became a member of the State Employees' Retirement System (SERS) at that time. In April 1990, he was diagnosed with metastatic colon cancer, and he retired from his employment on October 19, 1991. Between the time he was diagnosed with cancer and the date of his retirement, Decedent continued to report to work when he could. Workers' Compensation Judge[1] Irvin Stander began to draft Decedent's opinions, and, while Decedent at first discussed these cases with WCJ Stander, he eventually stopped doing so, although he continued to "sign off" on the opinions.

Meanwhile, in April 1991, Decedent met with Leonard Casoli, a SERS representative, to give him documentation to correct his date of birth. At that time, Casoli answered Decedent's questions about retirement options and provided Decedent with a pamphlet concerning those options. Thereafter, on October 9, 1991, Casoli afforded Decedent a written estimate of his retirement options, using a projected retirement date of December 31, 1991. On October 15, 1991, Decedent and Stevenson met with Dr. Sandra Schnall, Decedent's treating oncologist. Dr. Schnall then advised the couple that Decedent's chemotherapy treatments were not effective,

and she recommended other treatments. In doing so, she explained that she became less optimistic with the more treatments that were tried. Dr. Schnall told Stevenson separately that the outlook for Decedent was grim.

On October 16, 1991, Decedent and Stevenson met with Casoli for a session outlining his retirement options. That day, Decedent was tired, weak, and not able to drive himself to his appointment. Their son drove the couple to the meeting. Stevenson tried to convince Decedent to postpone the appointment due to his weakened state, but he would not. Although Casoli noticed that Decedent seemed ill and weak and was more pale and thin than he had been when they had met in April, he did not ask about Decedent's health, and he did not know that Decedent was seriously ill. Casoli asked Decedent for more proof of his birth, and Decedent answered that an older relative existed who could attest to his birth date. Stevenson did not participate in the meeting and thought only about the fact that Decedent was dying.

Casoli and Decedent engaged in small talk, and Decedent then informed Casoli that he wanted to elect a Full Retirement Allowance and a lump sum withdrawal of his total accumulated deductions. Using the October 9, 1991 written estimate, Casoli explained to Decedent the different retirement options that were available. Casoli recalculated Decedent's estimate according to his accurate birth date and again set forth the available retirement options. Casoli's explanation included that, although the highest monthly benefit derived from the maximum full retirement allowance, this option was the most risky, since the only payable death benefit was the balance of the monthly benefit for the number of days during the last month that Decedent lived. Casoli asked Decedent if he had any questions concerning his retirement options; Decedent said he had no questions; Decedent then completed in front of Casoli an application electing a full retirement monthly benefit and a lump sum with-

---

1. Pursuant to the 1993 amendments to the Workers' Compensation Act, Act of June 2, 1915, P.L. 763, *as amended*, 77 P.S. §§ 1—1041.4, referees are now known as Workers' Compensation Judges (WCJs). *See* Act 44, Act of July 2, 1993, P.L. 190.

drawal of his contributions and accrued interest. The following provision is located above a signature of Decedent on the application. "Having read and understood all of the preceding provisions, I acknowledge that my selection of a retirement payment plan (option) is final and binding." The following provision is also located above a signature of Decedent, where he elected the "Full Retirement" option.

I understand that under this plan I will receive the maximum amount each month for life. If I die before receiving in payments an amount equal to my own accumulated deductions (my contributions plus earned interest) as they were at the time of my retirement, the balance will be paid to my beneficiary(ies). I may name one or more beneficiaries at any time. I have completed and attached a Nomination of Beneficiary(ies) form.

Decedent further signed that "[t]he Retirement Counselor provided estimates and explanations to the extent that I am fully aware of all benefits to which I am entitled." This acknowledgement included an explanation of the various options for death benefits. During the counseling session, Decedent made other elections, including enrolling as a retiree in Blue Cross/Blue Shield's Major Medical Plan and electing to have federal income tax withheld from his benefits at the "married" rate. Decedent received a form to fill out and forward to a financial institution if he wanted his annuity payments directly deposited in that institution; the form was correctly completed and sent back to SERS. Moreover, after the October 16 meeting, Casoli received an affidavit attesting to Decedent's birth date.

Casoli typically stops counseling meetings when he thinks a member is too sick to participate; too perplexed to comprehend the retirement options, or is involved in a family argument concerning which retirement option to elect. There was nothing that caused Casoli to cease this counseling session. Moreover, Casoli never recommends a partic-

ular option to a retiring member. Decedent passed away on December 25, 1991. In February of 1992, SERS sent Stevenson a check for the sum of $47,766.61, the amount of Decedent's total accumulated deductions, finally settling his SERS retirement account. Stevenson filled out and returned to SERS a release and indemnification form to obtain retirement benefits, and she cashed the check because she needed funds for the payment of outstanding debts.

She later in January 1993 sent a letter to SERS hoping to alter Decedent's retirement option election. In April of 1993, SERS denied her request. Stevenson appealed· that denial; the Appeals Committee denied her appeal, but informed her she had a right to request an administrative hearing. She did so; the hearing was scheduled for July 6, 1994, but was then continued and rescheduled to September 27, 1995. Stevenson objected to the reassignment in hearing examiners, and moved that the original hearing examiner, Leon Haller, hear her case. The newly appointed hearing examiner, Lynne Mountz, denied her motion and presided over the September hearing. The hearing examiner held the record open for the introduction of additional evidence and the deposition testimony of experts from both sides. (See Findings of Fact, Hearing Examiner's Decision dated February 24, 1997). On January 24, 1997, the hearing examiner recommended "that the Board DENY Claimant's request to revoke the retirement benefit plan elected by Wallace J. Stevenson and permit her to elect a different retirement plan." Stevenson filed exceptions to the hearing examiner's decision and a petition to reopen the record, but the Board denied her appeal requests.

On appeal here, Stevenson raises the following issues in her statement of the questions involved. They are: 1) whether the Board erred in denying her request to change Decedent's selected retirement option; and 2) whether the Board erred in denying her petition to reopen the record.[2]

---

**2.** Our scope of review of an administrative board's final adjudication is limited to a determination of whether the adjudication is supported by substantial evidence, whether it accords with

the law and whether constitutional rights were violated. *Miller v. State Employes' Retirement System,* 156 Pa.Cmwlth. 83, 626 A.2d 679 (1993).

Stevenson first contends that the Board erred in denying her request to change Decedent's retirement option election because Decedent received inadequate counseling by Casoli and because Decedent was not mentally competent to render a decision about his retirement options on October 16, 1991.

Stevenson's lengthier arguments in this regard are also encapsulated in her brief as follows.

> The Decedent could not have been counselled in an appropriate manner, and he lacked the mental capacity to make a decision on October 16, 1991 by the very fact that he selected an option which provided no benefits to his beneficiaries after his death—knowing that he was going to die in the near future. In fact, he died two months later.

(Stevenson's brief, p. 10)

We begin by pointing out that Section 5907(j) of the State Employees' Retirement Code (Code), 71 Pa.C.S. § 5907(j) provides that, with a very limited exception not applicable here,[3] an annuitant may not change his or her benefit plan. Furthermore, we are unaware of any provision in the Code providing that a beneficiary or survivor annuitant, as opposed to a SERS member, may change his or her retirement option election, and Stevenson points us to none.

4 Pa.Code § 247.5 affords:

> Once a member has filed an application for benefits and chosen an option, including a single life annuity, *the option shall be deemed to be irrevocable* except as otherwise provided in section 5907(j) of the code

**3.** This section of the Code provides in part:

> A member having designated a survivor annuitant at the time of retirement shall not be permitted to nominate a new survivor annuitant unless such survivor annuitant predeceases him or unless the member is awarded a divorce or becomes married subsequent to the election of the option. In such cases, the annuitant shall have the right to reelect an option and to nominate a beneficiary or a new survivor annuitant and to have his annuity recomputed to be actuarially equivalent as of the date of recomputation to the annuity in effect immediately prior to the recomputation. *In no other case shall a benefit plan be changed by an annuitant.*

71 Pa.C.S. 5907(j).

(relating to rights and duties of State employees and members) or unless an annuitant returns to service for a period not less than 6 months and subsequently retires with recomputation of benefits.

(Emphasis added).

As well, 4 Pa.Code § 249.7(d) states in part:

> *Effect of election to receive a benefit.* A member who terminates State service, who is eligible to elect to withdraw his total accumulated deductions, or vest his retirement rights, or receive an immediate annuity, shall, *by exercising the election, be deemed to have made an irrevocable choice* which may not be changed unless the change was made prior to the effective date of termination of service.

(Emphasis added).

Our decision in *Marron v. State Employes' Retirement Board,* 118 Pa.Cmwlth. 174, 544 A.2d 1095 (1988), *appeal denied,* 522 Pa. 607, 562 A.2d 829 (1989) squarely meets Stevenson's assertion that Casoli provided inadequate counsel to Decedent, as evidenced by the fact that he chose a benefit plan that was illogical in light of his acutely poor health. Like Stevenson, Marron, the widow of a SERS member, sought to change her late husband's retirement option election. Also like Stevenson, Marron contended that her late husband was inadequately counseled as to his retirement options, as evidenced by his selection. Contrary to Stevenson, however, Marron wished to obtain a lump sum payment rather than a monthly benefit. We explained in *Marron* that the retirement counselor "did what the law required of her[,]"[4] *id.,* 544 A.2d at 1097, although she

**4.** At that time, Section 5906(f) of the Code, 71 Pa.C.S. § 5906(f), since *repealed by* the Act of August 5, 1991, P.L. 183, effective August 27, 1994, provided that "[t]he head of department shall designate an employee of his department to serve as a retirement counselor subject to approval by the board. Such retirement counselor shall assist the head of department in advising the employees of the department of their rights and duties as members of the system." However, Section 5905(c.1) of the Code, 71 Pa. C.S. § 5905(c.1), *added by* the Act of August 5, 1991, P.L. 183 and *amended by* the Act of April 29, 1994, P.L. 159, now provides:

> **Termination of service.**-In the case of any member terminating State service who is entitled to an annuity and who is not then a

did not ask about, *inter alia,* the decedent's financial circumstances, his likely life expectancy or his wife's health, and she did not counsel him as to what option he should choose. Like the retirement counselor in that case, Casoli also provided Decedent herein with a retirement options estimate, and there is no allegation that he misled Decedent, although he failed to suggest a particular options plan for him.

*Marron* also specifically cited Section 5907(j) of the Code and 4 Pa.Code § 247.5 and 249.7(d), stating that "[t]here is no provision in the Code which permits a survivor annuitant to change a plan elected by the employee-member." *Id.* As noted above, we are not aware of any change in this regard from the date of *Marron* to the present. In fact, in *Cosgrove v. State Employes' Retirement Board,* 665 A.2d 870, 874 (Pa.Cmwlth. 1995), citing, *inter alia,* Section 5907(j) of the Code and 4 Pa.Code § 249.7(d), we said: "We thus now conclude that the unequivocal statutory language prevents a change in benefit plans even if the pensioners were misled by inadequate counseling. If we were to hold otherwise, we would be required to alter the statute."

As for Stevenson's claim that Decedent was mentally incompetent to render a decision as to which retirement option to elect on October 16, 1991, the hearing examiner, affirmed by the Board, determined that Stevenson "has failed to prove by clear, precise and convincing evidence that [Decedent] was incompetent to make a retirement election on that date. Moreover, the evidence produced strongly indicates that [Decedent] was lucid, capable of understanding and mentally competent when he executed that document." (Hearing Examiner's Opinion, dated February 24, 1997, pp. 43–44). In rendering her decision, the hearing examiner assessed the testimony of Stevenson, Casoli, WCJ Stander and Dr. Schnall, Decedent's treating physician.[5] She also gave more weight to the testimony of Arnold Shienvold, Ph.D., SERS' expert, than she did to the testimony of David Berg, Ph.D., Stevenson's expert witness.[6] The Hearing Examiner stated in relevant part:

Dr. Shienvold's analysis of the facts concerning [Decedent's] purported state of denial is particularly compelling. Dr. Shienvold relies on the observations of

---

disability annuitant, the board shall advise such member in writing of any benefits to which he may be entitled under the provisions of this part and shall have the member prepare, on or before the date of termination of State service, one of the following three forms, a copy of which shall be given to the member and the original of which shall be filed with the board:

. . .

(3) an application for an immediate annuity...

5. For example, with respect to Stevenson's and Casoli's testimonies regarding Decedent's actions on October 15 and 16, 1991, the hearing examiner found: "These factors describing [Decedent's] behavior during his preparation for the counseling session, the actual counseling session and his follow-up to the counseling session weigh heavily in favor of a finding of legal competence. [Stevenson's] testimony does not negate this result." (Hearing Examiner's Opinion, dated February 24, 1997, p. 33). Moreover, with regard to Stevenson's testimony alone, the hearing examiner stated: "Without diminishing the physical and emotional effects of [Decedent's] illness as described by [Stevenson], there simply is nothing in her testimony which establishes that he was not legally competent to execute his retirement contract on October 16, 1991." (Hearing Examiner's Opinion, dated February 24, 1997, pp. 34–

35; footnote omitted). With respect to WCJ Stander's testimony, the hearing examiner stated in part: "Judge Stander testified that although [Decedent] worked until his retirement, he was 'incompetent' to do so near the end. ... Judge Stander's testimony, however, establishes only that [Decedent] had lost all interest in his job by the time of his retirement." (Hearing Examiner's Opinion, dated February 24, 1997, p. 35). Concerning Dr. Schnall's testimony, the hearing examiner stated: "Dr. Schnall's testimony indicates that [Decedent] continued to make important decisions regarding his health and welfare up to and including October 15, 1991." (Hearing Examiner's Opinion dated February 24, 1997, p. 37).

6. That said, we note the hearing examiner's comment that

[b]oth Dr. Berg and Dr. Shienvold observed that it would have been preferable to interview [Decedent] before rendering an opinion, rather than performing what Dr. Shienvold referred to as a "psychological autopsy." ... For this reason, the Hearing Examiner is inclined to afford less weight to their opinions than if they had actually interviewed [Decedent], something they unfortunately could not do.

(Hearing Examiner's Opinion, dated February 24, 1997, pp. 37–38).

[Stevenson], Dr. Schnall and Mr. Casoli, the three individuals who testified specifically to his behavior on October 15 and October 16, 1991, to conclude that [Decedent] was not in a state of denial.

...

After reviewing the record as a whole and the bases for the opinions of Dr. Berg and Dr. Shienvold, it is determined that Dr. Shienvold effectively refuted Dr. Berg's opinion that [Decedent] was in denial and rendered incompetent to execute his retirement contract on October 16, 1991.

(Hearing Examiner's Opinion, dated February 24, 1997, pp. 40, 42). In rendering these conclusions, the hearing examiner noted Dr. Shienvold's disinclination to believe that WCJ Stander's testimony proved that Decedent was incompetent, particularly on October 16, 1991. (*See* Hearing Examiner's Opinion, dated February 24, 1997, p. 41).

Our Supreme Court said in *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 384, 517 A.2d 523, 526 (1986) (citations omitted) (emphasis in original):

This Court has held that where mental capacity to execute an instrument is at issue, "the real question is the condition of the person at the very time he executed the instrument or made the gift in question...."] We further held that a person's mental capacity is best determined by his spoken words and his conduct, and that the testimony of persons who *observed such conduct on the date in question outranks testimony as to observations made prior to and subsequent to that date.* ... "Mere mental weakness, if it does not amount to inability to comprehend the contract, and is unaccompanied by evidence of imposition or undue influence," is insufficient to set aside a contract. ... Finally, a presumption of mental incapacity does not arise merely because of an unreasonable or unnatural disposition of property.

■ Here, despite Stevenson's arguments to the contrary, substantial record evidence, relied upon by the Board, and some of which was provided by Stevenson herself, supports the determination that Decedent was competent when he elected his retirement option on October 16, 1991. Among other things, Decedent indicated that he understood the retirement plans as explained to him; Decedent later provided more proof of his birth date to Casoli as requested at the meeting; the form for direct deposit of his annuity payments was correctly completed and returned; Casoli engaged in small talk with Decedent and did not find a need to halt the counseling session; and even Stevenson saw no reason to pay attention at the meeting, as evidenced by her failure to do so. Therefore, we reject Stevenson's claim that the Board's adopted findings of fact conflict with the evidence and that the Board erred as a matter of law.

Last, we confront Stevenson's assertion that the Board erred in denying her petition to reopen the record. Stevenson contends that she was prejudiced by the change in hearing examiners, which change she only learned of one day before the September 27, 1995 hearing, because the prior hearing examiner made rulings that the second hearing examiner did not follow, including that proposed witness reports had to be given to opposing counsel by September 27, 1995. Stevenson argues that this ruling would have precluded Dr. Shienvold's testimony, upon which the second hearing examiner relied.[7] Also, Stevenson claims that she was prejudiced by the change because the second hearing examiner disregarded WCJ Stander's testimony of Decedent's mental incompetence.

■ 1 Pa.Code § 35.231(a) provides in part that the petition to reopen "shall set forth clearly the facts claimed to constitute grounds requiring reopening of the proceeding, including material changes of fact or of law alleged to have occurred since the conclusion of the hearing." We have of course reviewed the petition and now agree with the Board that it does not allege any such material changes. Because the decision to deny a petition to reopen is one of agency discretion, *Rafferty v. State Board of Nurse Examiners,*

---

**7.** Dr. Shienvold's deposition was taken on November 2, 1995.

95 Pa.Cmwlth. 178, 505 A.2d 357 (1986); *Department of Justice v. State Civil Service Commission,* 13 Pa.Cmwlth. 542, 319 A.2d 692 (1974); 1 Pa.Code § 35.231(c), and we do not believe that the agency abused its discretion in this matter, we reject Stevenson's assertion in this regard.

We note that, although Stevenson objected to the change in hearing examiners both before and during the hearing, she never filed affidavits with respect to why Hearing Officer Mountz should have been withdrawn from this case. 1 Pa.Code § 35.186 specifically provides:

> A presiding officer may withdraw from a proceeding when he deems himself disqualified, or he may be withdrawn by the agency head for good cause found after timely affidavits alleging personal bias or other disqualification have been filed and the matter has been heard by the agency head or by another presiding officer to whom the agency head has delegated the matter for investigation and report.

Moreover, the prejudice that Stevenson alleges by the change in hearing examiners is hard to identify, since we have no written record of the original hearing examiner's rulings, including those that would govern the admission of Dr. Shienvold's testimony. In any event, it is clear that the second hearing examiner, in her opinion adopted by the Board, assessed the testimonies of Stevenson, Casoli and Dr. Schnall, and, based on their words, determined that Decedent was mentally competent on October 16, 1991. Certainly, the fact that she may not have credited WCJ Stander's testimony as to Decedent's mental state is not a reason for the second hearing examiner's withdrawal. This is particularly true where WCJ Stander admitted he was not sure he saw Decedent on October 16, 1991, the date he chose his retirement option plan. (Notes of Testimony, N.T., Testimony of WCJ Irvin Stander, Hearing of September 27, 1995, p. 17).

Having reviewed the record, we are convinced that the Board committed no error, and, although we sympathize with Stevenson's plight, we may not simply order the Board to alter Decedent's retirement option election where the law does not permit us to do so. For these reasons, we are constrained to affirm the order of the Board.

### ORDER

AND NOW, this 20th day of February, 1998, the order of the State Employees' Retirement Board, Docket No. 1993–19, dated June 9, 1997, is hereby affirmed.